UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JEFFREY MACKAY,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF SALINAS, et al.,<br><br>        Defendants. | Case No.   19-cv-02257-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 56 |

Plaintiff Jeffrey Mackay ("Mackay") brings suit against the City of Salinas ("City") and eight individual police officers ("Officers," collectively with City as "Defendants") under 42 U.S.C. § 1983 for violations of his Fourth Amendment and Fourteenth Amendment constitutional rights.  First Amended Complaint for Damages ("FAC"), ECF No. 20.  He alleges that the Officers used excessive force when they arrested him using two tasers and multiple closed-fist punches and kicks to his head and body.  *Id.* ¶ 1.  Mackay also asserts a *Devereaux* claim, alleging that the Officers fabricated false police reports against him, and a *Monell* claim, alleging that the City failed to adequately train the Officers.  *Id.* ¶¶ 29-52.

Defendants move for summary judgment on all claims.  Defs.' Mot. Summ. J. ("Mot."), ECF No. 56.  Mackay only opposes the motion in part; he agrees to dismiss his claims against all Officers who did not use force against him, as well as his *Monell* claim against the City.  Pl.'s Opp'n to Defs' Mot. Summ. J. ("Opp."), at 13.  Accordingly, Defendants' motion for summary

1    judgment is GRANTED as to Defendant City and Defendant Officers Ryan Keating, Clifton

2    Smith, Jose Luis Fletes, and Robert Hernandez.

3         Having considered the parties' briefing, admissible evidence, and the applicable law, the

4    Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment.

5    **I.     BACKGROUND**

6         Given that Defendants are moving for summary judgment, the Court must view the facts in

7    the light most favorable to Mackay and credit his version of the facts unless it is "blatantly

8    contradicted by the record." *Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020).

9    Accordingly, the following facts are admitted by Mackay or undisputed, unless otherwise noted.

10        **A.     Vehicle Pursuit**

11        At approximately 11:00 p.m. on Monday, April 23, 2018, Mackay left a sports bar in Old

12   Town Salinas and proceeded to drive himself home.  Mot. 2.  Although he had ordered alcohol at

13   the pub, he did not consume any before he left, due to an argument he had with his girlfriend.

14   Opp. 4; Mot. 2.  While driving through a residential neighborhood, Mackay was pulled over by

15   Officer Fletes, who observed Mackay drive through a stop sign without stopping.  Decl. of Jose

16   Luis Fletes, Jr. ("Fletes Decl.") ¶¶ 3-6.  As Officer Fletes got out and approached Mackay's

17   stopped vehicle, Mackay suddenly started his car and accelerated away.  *Id.* ¶ 8.

18        For 2.6 miles, Mackay fled from Officers Fletes and Garcia, reaching speeds up to 80

19   miles per hour and driving through various stop signs and red lights.  Decl. of Mutalipassi

20   ("Mutalipassi Decl."), Ex. 1 ("Mackay Dep. (MSJ)") 62:8-63:14.  There were no pedestrians and

21   only light traffic at that hour of the night, and Mackay recalls slowing down when he drove

22   through each stop sign and red light.  Pl.'s Compendium of Ex., Ex. K ("Mackay Dep. (Opp.)")

23   183:5-184:18 ("Not saying that I was driving in any legal fashion, but I wasn't suicidal").

24   Officers Fletes and Garcia ultimately ceased pursuit when Mackay turned onto and drove against

25   traffic on a one-way street.  Fletes Decl. ¶¶ 23-24; *see also* Mackay Dep. (MSJ) 63:15-64:7.

26        The pursuit picked up again when Mackay drove past Officer Keating at approximately 60

27   to 70 miles per hour.  Decl. of Ryan Keating ("Keating Decl.") ¶ 3.  Officer Keating confirmed the

28   Case No.: 19-cv-02257-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFS' MSJ

United States District Court
Northern District of California

license plate and then pursued Mackay's vehicle through multiple stop signs and red lights for about 4.9 miles.  *Id.* ¶¶ 3-13, 16.  At one point, Mackay made a U-turn on a two-way street to drive in the opposite direction while officers were in pursuit, which Officer Mitchell viewed as an attempt to ram him.  Decl. of Cameron Mitchell ("Mitchell Decl.") ¶¶ 24-27.  Mackay, however, denies getting close enough to an officer's vehicle to have been misconstrued as a ramming attempt.  Opp. 5.  Officers ultimately caught up to Mackay's vehicle when it started to run out of gas and Mackay exited his vehicle to continue his escape on foot.  Mackay Dep. (MSJ) 81:2-23.

### B.    Foot Pursuit

After leaving his vehicle, Mackay hopped over a 4-foot-tall metal fence and then scaled a 10-foot-tall concrete wall into an apartment complex while being pursued by Officer Mitchell.  Mitchell Decl. ¶¶ 36-37.  Officer Mitchell chased Mackay through the courtyard and parking lot of the apartment complex, while other officers had surrounded all the exits out of the complex.  *Id.* ¶¶ 39-46.  Officer Mitchell states, and Mackay does not dispute, that Mackay appeared to surrender at one point but took off running when Officer Mitchell attempted to grab him.  *Id.* ¶¶ 43-44.  Throughout the foot chase, Mackay was not reported to be armed, aggressive, or combative, and it appeared Mackay was "just concerned about getting away."  Opp. 6; *see generally* Mutalipassi Decl., Ex. 6 ("SPD Report No. 18-041154").

After a few minutes of pursuit within the apartment complex, Mackay attempted to run out to the street via the apartment parking lot but was cut off by other officers.  Mitchell Decl. ¶ 44; *see also* Pl.'s Compendium of Ex., Ex. Q ("BWV 2"), at 0:04.  Mackay then ducked between two cars and ran along the fenced border of the parking lot.  BWV 2, at 0:05-0:19.  When he reached the walled corner of the parking lot, Mackay attempted to scale over the 6-foot-tall fence.  *Id.*  At this point, Officer Mitchell called out to the other officers to "tase him."  Mitchell Decl. ¶ 45.  As Mackay was in the middle of climbing over the fence, Officers Garcia and Puckett successfully deployed their tasers against Mackay for 2 and 5 seconds respectively, and Mackay fell to the ground.  Mot. 4; Opp. 7-8; *see also* Pl.'s Compendium of Ex., Ex. P ("BWV 1"), at 0:44.

Case No.: 19-cv-02257-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFS' MSJ

**C.     Arrest**

There is some dispute as to whether Mackay experienced full or partial neuromuscular incapacitation from the tasers, but the Body Worn Videos of the incident clearly show Mackay's body stiffening up and falling over with his arms to his side barely breaking the fall.  *See* BWV 1, at 0:46; BWV 2, at 0:21.  When Mackay hit the ground, an officer immediately rushed to his side and audibly struck Mackay's head with a closed fist.  *See* BWV 1, at 0:49-50.  After this strike, Mackay can be heard calling out, "Okay, I'm done.  Okay, I'm not resisting."  *Id.* at 0:52-55.  For about 18 seconds, there appears to be some scuffle on the ground, during which Mackay was kicked in his shoulder, struck multiple times on his head with a closed fist, and multiple officers' hands appeared to hold him down or grab his hair.  *Id.*, at 0:50-1:08; *see also* Pl.'s Compendium of Ex., Ex. R ("BWV 3"), at 0:20-22.  Mackay's hands can be seen first covering his face and then extended out above his head, at which point the violence ceased and Mackay was taken into custody.  BWV 3, at 0:24.

Officers Mitchell and Urrutia assert that they administered several "compliance strikes" to Mackay because he would not give up his hands, which they claim were underneath his body near his waistband.  Opp. 5; *see* Mitchell Decl. ¶¶ 49-52.  Officer Mitchell also expressed a fear that Mackay was in possession of and reaching for a firearm or other weapon.  Mitchell Decl. ¶¶ 50-51.  Mackay, however, testified in his deposition that his hands were to his sides and visible near his hips when he fell off the fence.  He also recalls that he tried but was not able to move his hands out.  Mackay Dep. (Opp.) 112:7-114:14.

After Mackay was taken into custody, he was transported to the hospital.  Opp. 5.  The emergency room doctors found that he required three stitches near his ear and had various swelling and contusions.  *Id.*; *see also* Pl.'s Compendium of Ex., Ex. U.  Mackay also testified that he still suffers from concussion-related brain injury and hearing loss because of his injuries from that night, as well as continuing emotional distress.  Mackay Dep. (Opp.) 237:3-238:2.

**D.     Post-Arrest Events and Procedural History**

Mackay was charged with multiple felony and misdemeanor counts, but he pleaded no

1    contest to only two: a felony violation of Cal. Veh. Code § 2800.4 (Driving Opposite Direction /

2    Fleeing Peace Officer) and a misdemeanor violation of Cal. Pen. Code § 148(a)(1) (Obstructing /

3    Resisting Public Officer).  Mutalipassi Decl., Exs. 2, 3.  On September 13, 2018, Mackay

4    stipulated to receiving 4 years in prison with his misdemeanor sentence to run concurrent with his

5    felony sentence.  Pl.'s Compendium of Ex., Ex. T ("Mackay Plea Agreement").

6        On February 13, 2019, Mackay filed suit against Defendants in the Superior Court of

7    California, County of Monterey.  Notice of Removal ¶ 1, ECF No. 1.  On April 25, 2019,

8    Defendants removed the matter to this Court.  *Id.*  The parties engaged in at least three ADR

9    sessions but were not able to settle.  *See* ECF No. 72, at 8.

## II.    LEGAL STANDARD

11       Summary judgment is proper where the pleadings, discovery, and affidavits show that

12   there is "no genuine issue as to any material fact and that the moving party is entitled to judgment

13   as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if it would affect the outcome of

14   the suit under the governing law, and a disputed issue is "genuine" if the "evidence is such that a

15   reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*,

16   477 U.S. 242, 248-49 (1986).

17       The party moving for summary judgment bears the initial burden of identifying those

18   portions of the record which demonstrate the absence of a genuine issue of material fact.  *See*

19   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party can meet this initial

20   burden, the burden then shifts to the non-moving party to produce admissible evidence and set

21   forth specific facts showing that a genuine issue of material fact does indeed exist for trial.  *See*

22   *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).  If

23   the non-moving party produces enough evidence to show a genuine issue of material fact exists,

24   then it defeats the motion; otherwise, the moving party is entitled to summary judgment.  *Id.*

25       In considering a motion for summary judgment, the Court must view the evidence in the

26   light most favorable to the non-moving party.  *See Tolan v. Cotton*, 572 U.S. 650, 655 (2014).

27   The Court may not weigh conflicting evidence as to a disputed fact nor may it make credibility

28   Case No.: 19-cv-02257-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFS' MSJ

                                                  5

1    determinations; any disputed factual issues must be resolved in favor of the non-moving party.

2    *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

3    However, the Court need not credit the non-moving party's version of events where it is blatantly

4    contradicted by the record.  *See Orn*, 949 F.3d at 1171.

5    **III.    DISCUSSION**

6         Defendants move for summary judgment of the remaining claims primarily on two

7    grounds.  They argue first that the individual officers are entitled to qualified immunity, and

8    second, Mackay's § 1983 claims constitute improper collateral attacks on his § 148(a)(1) plea for

9    resisting arrest.  Mot. 1.  Defendants also argue that the force they used in effectuating Mackay's

10   arrest was objectively reasonable.  *Id.*  For the following reasons, the Court GRANTS IN PART

11   and DENIES IN PART Defendants' motion.

12        **A.    *Heck* Preclusion**

13        The Court first addresses Defendants' argument that Mackay cannot proceed with his §

14   1983 claim because doing so would invalidate portions of his § 148(a)(1) conviction for resisting

15   arrest.  This doctrine is often referred to as the *Heck* bar after the Supreme Court's 1994 decision,

16   *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("[W]hen a state prisoner seeks damages in a §

17   1983 suit, the district court must consider whether a judgment in favor of the plaintiff would

18   necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be

19   dismissed. . . .").  In other words, if Mackay's § 1983 claim for excessive force would negate an

20   element of or allege facts inconsistent with his prior conviction, then the § 1983 claim must be

21   dismissed to "prevent[] collateral attacks on convictions by way of civil actions."  *Sanders v. City*

22   *of Pittsburg*, 14 F.4th 968, 970-71 (9th Cir. 2021).

23        The conviction at issue here is Mackay's plea to § 148(a)(1) for "resist[ing], delay[ing], or

24   obstruct[ing] any . . . peace officer."  A required element for § 148(a)(1) is that "the officer was

25   engaged in the performance of his or her duties" when a defendant resisted, delayed, or obstructed

26   the officer.  *Yount v. City of Sacramento*, 43 Cal. 4th 885, 895 (2008).  Notably, "[t]he use of

27   excessive force by an officer is **not** within the performance of the officer's duty."  *Sanders*, 14

28

United States District Court
Northern District of California

1    F.4th at 971 (emphasis added) (citing *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005)).

2    Accordingly, an excessive force claim is barred by *Heck* if it is "predicated on allegedly unlawful

3    actions by the officer *at the same time* as the plaintiff's conduct that resulted in his § 148(a)(1)

4    conviction." *Sanders*, 14 F.4th at 971 (italics in original).  Where a § 148(a)(1) conviction may be

5    based on multiple acts of resistance, a § 1983 claim that is "*inconsistent with even a portion of that*

6    *conviction* is barred because it would necessarily imply the invalidity of that part of the

7    conviction." *Id.* at 972 (emphasis in original) (quoting *Yount*, 43 Cal. 4th at 896).  However, if the

8    alleged excessive force occurred *before* or *after* the acts that gave rise to the conviction or can

9    otherwise be distinguished to rely on separate "factual context[s]," then the § 1983 claim would

10   not necessarily imply the invalidity of a § 148(a)(1) conviction.  *Id.*

### 1.    Mackay's § 148(a)(1) Plea

12        Because the inquiry under *Heck* turns on a comparison between the facts underpinning the

13   criminal conviction and the allegations supporting the § 1983 action, the Court first turns to

14   Mackay's plea agreement to ascertain the factual basis for his § 148(a)(1) conviction.

15        Part 13 of Mackay's no-contest plea sets forth the "Factual Basis" for his no contest plea.

16   Mackay Plea Agreement, at 2.  As the factual basis, Mackay offers police report number SPD 18-

17   41154 and a handwritten set of specific facts:

> On or about 4/23/18, Defendant willfully and unlawfully evaded officer against
> traffic, with knowledge thereof, and intent to elude pursuit.  Subsequently, Def.
> willfully delayed peace officer [sic] while in performance of their duties by failing
> to stop and comply with commands to stop while on foot.

21   Mackay Plea Agreement, at 2; Opp. 13.  The trial judge signed the plea agreement, finding that

22   "there is a factual basis" for Mackay's conviction, but there is otherwise no further indication as to

23   what specific facts Mackay's § 148(a)(1) conviction is based on.  Mackay Plea Agreement, at 3.

24        Defendants argue that, because Mackay offered the entire Police Report Number SPD 18-

25   41154 as a basis for his plea and the trial court did not expressly indicate it excluded portions of

26   the police report, Mackay's conviction rests on all facts asserted in the police report.  Mot. 12.  Per

27   Defendants, this includes all events relating to Mackay's continued resistance up to the time that

28   Case No.: 19-cv-02257-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFS' MSJ

1    the officers secured his wrists in handcuffs, which would overlap with—and thereby preclude—all

2    of Mackay's excessive force allegations.  *Id.*  Mackay responds that he had expressly limited the

3    basis for his plea of resisting arrest to the specified handwritten conduct, *i.e.*, evading officers

4    against traffic and failing to stop and comply with officers' commands to stop while on foot.

5    Accordingly, Mackay argues, the § 148(a)(1) conviction would not be disturbed by allegations that

6    the officers used excessive force *after* those actions.  Opp. 22-23.

7        Mackay has the better argument here.  Several courts have found it relevant that a

8    defendant failed to provide a separate basis for his or her no-contest plea and, therefore, could not

9    distinguish which specific acts of resistance led to the conviction and which did not.  *See, e.g.*,

10   *Sanders*, 14 F.4th at 972 ("Here, we cannot separate out which of [plaintiff's] obstructive acts led

11   to his conviction since all of them did.  As part of his guilty plea, [plaintiff] stipulated that the

12   factual basis for his conviction encompassed the three instances of resistance identified in the

13   preliminary hearing transcript."); *Winder v. McMahon*, 345 F. Supp. 3d 1197, 1203 (C.D. Cal.

14   2018) (finding it relevant that plaintiff did not limit his plea agreement to only certain portions of

15   the submitted preliminary transcript or provide a separate factual basis).  Most notably, the

16   Supreme Court of California, in finding that part of a § 1983 plaintiff's claim is barred by *Heck*,

17   provided the following guidance: "Had [plaintiff] wanted to maximize his ability to challenge the

18   officers' conduct in a subsequent civil action, he could have sought to **identify and limit the basis**

19   **for his plea** to violating Penal Code section 148, subdivision (a)(1)."  *Yount*, 43 Cal. 4th at 897

20   (emphasis added).  This is precisely what Mackay did in his plea agreement.[1]

21       Because Mackay limited the basis for his § 148(a)(1) plea to a set of specified facts as

22   expressly permitted by the California Supreme Court, the Court will correspondingly limit its

23   *Heck* analysis to those facts.  The Court proceeds to consider whether Mackay's excessive force

24

25   ───────────────

[1] This is not to suggest that it would be universally beneficial for every criminal defendants to
26   write in a specific factual basis for their plea agreements.  As the California Supreme Court noted,
     a plaintiff also obtains substantial benefit from a more general plea, as "[b]y declining to limit the
27   scope of his no contest plea, [the plaintiff] is protected against a new prosecution for resisting
     these officers by the double jeopardy clause."  *Yount*, 43 Cal. 4th at 897.

28   Case No.: 19-cv-02257-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFS' MSJ
     8

claims would necessarily imply the invalidation of any of those specified facts.

### 2. Tasers

Mackay argues in his opposition that Officers Garcia and Puckett used excessive force in deploying tasers against him when he was fleeing. Opp. 7. There is no dispute that, when Officers Garcia and Puckett deployed tasers at Mackay's back, he was still attempting to flee. *Id.* As comparison, Mackay's plea admits that he "willfully delayed peace officer[s] while in performance of their duties by failing to stop and comply with commands to stop while on foot." Mackay Plea Agreement, at 2.

Given these facts, the Court cannot draw a factual distinction such that Mackay's plea admissions and taser-related claim can both stand. On this point, the Ninth Circuit had held that, although a continuous transaction can be broken into 'different actions' for purposes of a § 1983 action, we may not "slice up the *factual basis* of a § 148(a)(1) conviction to avoid the Heck bar." *Sanders*, 14 F.4th at 972 (italics in original). Here, there is no dispute that, up until the moment he was tased, Mackay was still "failing to stop and comply with commands," as phrased in his plea agreement. Mackay also admitted that this failure to stop and comply with commands occurred "*while* [the officers were] in performance of their duties." Mackay Plea Agreement, at 2 (emphasis added). Accordingly, the temporal scope of Mackay's plea admissions extends until he stopped or otherwise complied with the officers' commands, a line that Mackay himself draws. *See* Opp. 23 ("[T]here are two phases to the incident, the fleeing on foot phase and the arrest phase."). Even when viewed in the light most favorable to Mackay, this durational scope overlaps—albeit only momentarily—with his allegations that the Officers used excessive force by deploying tasers while he was fleeing, FAC ¶ 21, which triggers the *Heck* bar. Mackay's allegation that Officers Garcia and Puckett used excessive force *while* he was fleeing would necessarily invalidate his prior plea admission that the officers were in performance of their duties *while* he was failing to stop and comply with commands.

For the foregoing reasons, the Court finds that, to the extent Mackay's excessive force claim arises from the use of tasers against him as he was still fleeing, those claims are barred by

Case No.: 19-cv-02257-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFS' MSJ

1   his prior plea admissions.  The Court accordingly GRANTS summary judgment to Officers Garcia

2   and Puckett as to Mackay's § 1983 excessive force claim.

3               **3.       Punches and Kicks**

4       Mackay also asserts that Officers Mitchell and Urrutia used excessive force against him

5   when they struck him multiple times with closed fists and kicks after he had fallen to the ground

6   incapacitated and compliant.  FAC ¶ 21.  Once again, the inquiry under *Heck* is whether these

7   allegations of excessive force would necessarily imply that Mackay's § 148(a)(1) plea was invalid.

8   The Court finds that these allegations would not, and the § 1983 claim is not barred.

9       As noted at Section III.A.1., the Court interprets Mackay's plea admissions to extend until

10  he stopped running, which naturally also applies to his admissions regarding Defendants' lawful

11  "performance of their duties."  In other words, Mackay's plea only admits that Defendants were

12  "in performance of their duties" *while* he was delaying peace officers and failing to stop; the plea

13  does not admit that Defendants were "in performance of their duties" *after* Mackay had stopped

14  running and was on the ground.  Accordingly, the factual basis supporting Mackay's conviction

15  (his flight on foot from Defendants) can be readily distinguished from the basis supporting his §

16  1983 claim (Defendants' punches and kicks after Mackay stopped running and fell on the ground).

17      Defendants argue that Mackay's plea and the *Heck* bar should apply to their conduct up

18  until Mackay was in handcuffs.  Reply 12.  However, Mackay does not admit that he was resisting

19  up until he was in handcuffs—he only admits that he was resisting while he was running from

20  Defendants.  Mackay Plea Agreement, at 2; *see also* Mackay Dep. (Opp.) 112:7-114:14.  At the

21  summary judgment stage, the Court is required to accept Mackay's facts.  To the extent

22  Defendants' argument rely on the fact that Mackay's plea attached the entire Police Report

23  Number SPD 18-41154, this reliance is misplaced.  Mackay provided a basis to limit the temporal

24  scope of his plea—and corresponding admissions pertaining to Defendants' performance of their

25  duties—to his conduct before he stopped running.  Mackay Plea Agreement, at 2.

26      Defendants also argue that their facts are analogous to those in *Lemos v. Cnty. of Sonoma*,

27  where the Ninth Circuit affirmed the application of the *Heck* bar.  5 F.4th 979 (9th Cir. 2021),

28  Case No.: 19-cv-02257-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFS' MSJ

United States District Court
Northern District of California

reh'g en banc granted, opinion vacated, 22 F.4th 1179 (9th Cir. 2022).  Notwithstanding the fact

that Lemos is no longer good law, the facts here are nonetheless distinguishable.  In Lemos, the

underlying conviction involved a jury that found that plaintiff's "resistance [was] continuous

throughout the entire transaction of events."  Id. at 985.  Here, although Defendants assert that

Mackay was actively resisting at all times prior to being restrained in handcuffs, Mot. 12, Mackay

disputes this assertion and testified that he was incapacitated while on the ground and attempting

to comply with the officers' commands.  Mackay Dep. (Opp.) 112:7-113:11.  Given that the Court

must adopt Mackay's version of events on summary judgment, Defendants' cited case law is

distinguishable based on the scope of the underlying criminal conviction.

To the extent Mackay asserts that Officers Mitchell and Urrutia used excessive force in

continuously striking him after he had stopped running and resisting, the Court finds that

Mackay's § 1983 claim involves different factual allegations from those underpinning his §

148(a)(1) conviction.  Accordingly, Mackay may assert the excessive force claim against Officers

Mitchell and Urrutia without risking his prior conviction being invalidated.

### 4. *Devereaux* Fabrication Claim

Defendants also asserts that Heck bars Mackay's Devereaux claim that Defendants

falsified their police reports.  Mot. 13.  The thrust of this argument is that, because Mackay had

offered the full police report as a factual basis for his plea, his allegation that portions of that

police report were false or fabricated would necessarily imply his conviction was invalid.  Id.  In

his opposition, Mackay specifies that he only challenges specific statements in Defendants' reports

that were allegedly falsified, such as Officer Mitchell's claim that Mackay attempted to ram him

with his vehicle and Officers Mitchell's and Urrutia's reports that they immediately deescalated

after Mackay said, "Okay, I'm done, I'll stop."  Opp. 15-17.

Defendants have not shown how Mackay's success on his Devereaux claim would disturb

his convictions for Cal. Veh. Code § 2800.4 (Driving Opposite Direction / Fleeing Peace Officer)

and Cal. Pen. Code § 148(a)(1) (Obstructing / Resisting Public Officer).  Defendants appear to

assume that the criminal court relied on every fact in the police report Mackay offered in his plea

United States District Court
Northern District of California

agreement.  Reply 12.  However, this broad assumption is unwarranted where Mackay provided specific and separate factual bases for his plea agreement, the substance of which he does not claim Defendants fabricated (*i.e.*, that Mackay failed to stop and comply with Defendants' commands).  *See supra* III.A.1.  This also distinguishes the present case from Defendants' cited authority, *Ortega v. Mattocks*, No. 13-CV-06016-JSC, 2014 WL 7275372, at *5 (N.D. Cal. Dec. 22, 2014) (finding that *Heck* applied where the excessive force claim "depend[ed] on a finding that . . . the police did not have cause to charge him with resisting arrest.").

Accordingly, Mackay's § 1983 claim for false reporting does not necessarily imply the invalidity of his underlying convictions and, therefore, is not barred by *Heck*.

### B.    Qualified Immunity

Having considered Defendants' arguments that they are entitled to summary judgment based on *Heck*, the Court proceeds to assess whether they are entitled to qualified immunity from Mackay's surviving § 1983 claims (*i.e.*, excessive force claim for Defendants' punches and kicks, *Devereaux* claim for deliberate fabrication of evidence).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  To overcome qualified immunity, a plaintiff must make two showings: first, the facts plaintiff has alleged or shown must make out a violation of a constitutional right; and second, the right at issue must have been "clearly established" at the time of defendant's alleged misconduct.  *Id.* at 232 (summarizing *Saucier v. Katz*, 533 U.S. 194 (2001)).  A plaintiff must satisfy both prongs to defeat an assertion of qualified immunity, and the Court may consider the two prongs in whichever order.  *Id.* at 236.

With respect to the second prong, "clearly established" law may not be defined at a high level of generality, *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), and it must be "particularized to the facts of the case."  *White v. Pauly*, 580 U.S. 73 (2017).  The Court may not, for instance, rely on a general proposition that unreasonable searches and seizures violate the Fourth Amendment to

Case No.: 19-cv-02257-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFS' MSJ

1    determine whether the violative nature of a particular conduct was clearly established.  *Ashcroft*,

2    563 U.S. at 742.

3                          **1.    Excessive Force Claim**

4           Because the Court has held that *Heck* bars Mackay's excessive force claims as to the taser

5    usage, the Court only considers whether qualified immunity protects Officers Mitchell and Urrutia

6    from claims that they used excessive force in punching and kicking Mackay while on the ground.[2]

7           The Court first considers whether Mackay has shown a constitutional violation.  The

8    constitutional right implicated by claims of excessive force is the Fourth Amendment's right to be

9    free from "unreasonable . . . seizures," and therefore, plaintiffs must show that the force used

10   against them was not "objectively reasonable in light of the facts and circumstances."  *Graham v.*

11   *Connor*, 490 U.S. 386, 396-97 (1989) (internal quotation marks omitted).  To assess "objective

12   reasonableness," courts in the Ninth Circuit consider: "(1) the severity of the intrusion on the

13   individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the

14   government's interest in the use of force, and (3) the balance between the gravity of the intrusion

15   on the individual and the government's need for that intrusion."  *Rice v. Morehouse*, 989 F.3d

16   1112, 1121 (9th Cir. 2021).  With regards to the second factor, courts evaluate the state's interest

17   by considering "the severity of the crime at issue, whether the suspect pose[d] an immediate threat

18   to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting

19   to evade arrest by flight."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007)

20   (citing *Graham*, 490 U.S. at 396).  Notably, because the reasonableness inquiry is an objective one

21   in light of the facts and circumstances confronting the officer defendants, courts may not consider

22   the defendants' subjective intent or motivation nor should it view the circumstances with "20/20

23   vision of hindsight."  *Graham*, 490 U.S. at 396-97.

24

25   _____

[2] Mackay claims that Officer Mitchell punched him in the head between eight to ten times, and
26   Officer Urrutia kicked him five times and punched him in the head five times.  Opp. 9-10.  Neither
Mackay nor Defendants provide a meaningful distinction between the type and quantum of force
27   used by Officers Mitchell and Urrutia.  The Court accordingly considers both Officers' use of
force together in assessing their reasonableness.

28   Case No.: 19-cv-02257-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFS' MSJ
                                          13

United States District Court
Northern District of California

1

### a.      Severity of Intrusion

With respect to the severity of the intrusion onto Mackay's rights, kicks and punches to the head are often treated as intermediate or significant force that, "while less severe than deadly force, nonetheless presents a significant intrusion upon an individual's liberty interests." *Gordon v. City & Cnty. of San Francisco*, No. 20-CV-03910-JCS, 2021 WL 5449074, at *9 (N.D. Cal. Nov. 22, 2021); *see also*, *e.g.*, *Tuuamalemalo v. Las Vegas Metro. Police Dep't*, 2018 WL 11016234, at *6 (D. Nev. Mar. 27, 2018) ("So, at most, [defendant's] punch was intermediate force"); *Garlick v. Cnty. of Kern*, 167 F. Supp. 3d 1117, 1147 (E.D. Cal. 2016) ("Generally, impact blows by punching or kicking are considered 'significant force.'").  The severity of this intrusion, however, is magnified by the number of strikes used here: thirteen to fifteen punches and five kicks over a period of 18 seconds.

Mackay's efforts to treat the Officers' punches and kicks as deadly force are unpersuasive. He relies on his own expert's report but does not cite any specific cases where impact blows to the head arose to the level of deadly force.  Opp. 11-12.  Nor does he identify any specific circumstances here that may elevate otherwise non-lethal force to deadly force.[3]  *Cf. Garlick*, 167 F. Supp. 3d at 1147 (noting that punches and kicks are broadly characterized as non-lethal force but could be employed in some circumstances to create substantial risk of death or serious bodily injury).  "Non-lethal, however, is not synonymous with non-excessive; all force—lethal and non-lethal—must be justified by the need for the specific level of force employed." *Bryan v. MacPherson*, 630 F.3d 805, 825 (9th Cir. 2010).

### b.      State's Interest in Using Force

The Court proceeds to evaluate the state's interest in using force against Mackay, which is guided by the factors set forth by the Supreme Court in *Graham*.  490 U.S. at 396.

The first factor focuses on the severity of the crime at issue.  Mackay was initially pulled over for a traffic infraction (either driving through a stop sign or talking on his cell phone).

---

[3] Indeed, the deposition excerpt Mackay offers in support of this position discusses kicks in the context of professional mixed martial arts fights.  Pl.'s Compendium of Ex., Ex. M.

Case No.: 19-cv-02257-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFS' MSJ
14

However, there is no dispute that, in fleeing from Defendants, Mackay drove against traffic on a one-way street, drove up to 80 miles per hour, and drove through red lights and stop signs. *See* Mackay Dep. (MSJ) 62:8-63:14; 183:5-184:18. Driving against traffic is a felony, though this is tempered by the fact that it is also a non-violent traffic offense and Mackay only did so for a brief distance. *See* Fletes Decl. ¶ 24 (noting that he last saw Mackay turning off the one-way street). The Ninth Circuit has held that traffic violations generally do not support the use of a significant level of force. *See Bryan*, 630 F.3d at 828 (9th Cir. 2010); *United States v. Daniels*, No. 19-CR-00709-BLF-1, 2022 WL 1540035, at *7 (N.D. Cal. May 16, 2022) (noting that running two stop signs was a "minor traffic infraction"). Taken with Mackay's testimony that there was light traffic and no pedestrians that night, the first *Graham* factor weighs in Mackay's favor.[4]

The second *Graham* factor considers whether Mackay posed an immediate threat to the safety of the officers or others, which courts often refer to as the "most important single element of the [*Graham*] factors." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). Here, Mackay appeared to be "just concerned about getting away" and did not exhibit any acts of aggression or violence towards any of the officers pursuing him while on foot. Opp. 3-4. Additionally, crediting Mackay's version of the facts, once he fell on the ground, Mackay experienced full neuromuscular incapacitation and did not fight back or resist. Opp. 8-9. The Body Worn Video shows Defendants continuing to strike Mackay after he had yelled, "Okay, I'm done," one or two seconds after he hit the ground. BWV 1, at 0:52-55. The Court cannot say that, at the time Defendants used the force at issue here, Mackay was an "*immediate* threat to the safety of the officers or others."

Defendants assert that they feared for their safety because Mackay "was determined to escape, that [he] was willing to endanger his own life and the lives of the officers and the public in order to achieve that end, and that [he] may have been armed with a weapon." Mot. 8-9.

---

[4] Defendants note the fact that all of Mackay's crimes were "serious crimes . . . related to his active resistance and attempts to escape." Opp. 13. While certainly a relevant factor, the Court considers Mackay's resistance in its analysis of the third *Graham* factor, rather than double count it in the first factor.

However, fleeing from officers on its own is not violent nor threatening, and there is no evidence that Mackay's attempts to flee on foot endangered the Officers or the public.  Furthermore, the public safety risk that Mackay had posed when he was driving recklessly would have dissipated once he exited his vehicle.  And despite Defendants' asserted belief that Mackay may have been armed, Officer Mitchell maintained a visual on Mackay for nearly the entire foot pursuit, was actively looking to see if he was armed, and did not see anything to indicate Mackay was armed.  Pl.'s Compendium of Ex., Ex. B ("Mitchell Dep.") 64:5-65:12.

Taking the factual circumstances in the light most favorable to Mackay, the Court finds that the second *Graham* factor tips moderately towards Mackay and, at the very least, there exists a genuine issue for a jury as to whether Mackay posed an "immediate threat" when Officers Mitchell and Urrutia used force against him.

The third and final *Graham* factor considers whether Mackay actively resisted arrest or attempted to evade arrest by flight.  This factor indisputably weighs in favor of Defendants, as Mackay has pleaded to resisting arrest for failing to stop and comply with officers' commands and evading officers against traffic.  Mackay's Plea Agreement, at 2.  That said, this weight is somewhat reduced by the fact that Mackay was no longer resisting at the time of Defendants' use of alleged excessive force.  The Court notes this distinction because this factor would shift significantly in favor of Defendants if the force at issue was instead Defendants' use of tasers to subdue the then-fleeing Mackay.

In sum, the first and second *Graham* factors generally weigh in favor of Mackay, and the third factor leans towards Defendants.  The state's interest in using some force against Mackay was certainly present throughout his overall exchange and flight from the officers, but the interest would have diminished significantly once Mackay had exited his vehicle and again after he had fallen to the ground from neuromuscular incapacitation.

### c.    Balancing of Intrusion with State Interest

In balancing the state's intrusion onto Mackay's rights (multiple punches and kicks) with its interest in using force (existent but diminished), the Court cannot say that there is no genuine

Case No.: 19-cv-02257-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFS' MSJ

1    issue of material fact such that Defendants are entitled to qualified immunity.

2              Defendants primarily justify their use of punches and kicks by arguing Mackay continued

3    to resist on the ground and would not give up his hands.  Mot. 8, 14; Reply 13-14.  However,

4    Mackay testified that he did not resist after he was tased nor did he move his hands underneath

5    him.  Mackay Dep. (Opp.) 112:7-113:11.  The video footage appears to support Mackay's

6    assertion that he did not resist and, at the very least, does not blatantly contradict his assertion.

7    BWV 1, at 0:52-55.  Accordingly, the Court must adopt Mackay's version of the facts, which is

8    that Defendants punched and kicked him while he was on the ground and not resisting or fighting

9    back.  The fact that Mackay had previously fled from the police and engaged in unsafe driving in

10   doing so—a fact that Defendants cite multiple times—carries significantly less weight in

11   considering whether the force at issue was justified when Mackay was out of his car, no longer

12   able to flee, and not resisting.

13             If Mackay can prove these facts as shown, the Court cannot say that no reasonable jury

14   could find that the force used by Officers Mitchell and Urrutia was unreasonable and excessive.

15   Accordingly, Mackay has shown that his constitutional rights were violated, overcoming the first

16   prong of qualified immunity.

17                         **d.    Clearly Established Law**

18             In accordance with the Supreme Court's admonition to consider "clearly established" law

19   that is specific and "particularized to the facts of the case," *White*, 580 U.S. 73, the Court

20   considers the state of the law in April 2018 regarding the use of punches and kicks to apprehend a

21   suspect who is not resisting.[5]  The Court is satisfied that the law was sufficiently and "clearly

22   established" to provide fair notice to Officers Mitchell and Urrutia that their actions could have

23   been unconstitutional.

24             The Court finds especially persuasive the Ninth Circuit's decision in *Blankenhorn v. City*

25   _____

26   [5] Mackay cites several cases to support his assertion that the unconstitutional nature of
     Defendants' conduct was clearly established.  Opp. 19.  However, every case involved the use
27   of deadly force and firearms, and therefore is inapposite to considering, as here, the use of
     intermediate or substantial force from body weapons.  *See* Reply 3-8.

28   Case No.: 19-cv-02257-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFS' MSJ

United States District Court
Northern District of California

1    *of Orange*, 485 F.3d 463 (9th Cir. 2007), the facts of which bear many resemblances to the facts

2    here.  In *Blankenhorn*, the officers had punched the plaintiff several times while he was on the

3    ground because they were "trying to get [the plaintiff's] arms out from underneath him and secure

4    the handcuffs." *Id.* at 481.  Much like Defendants here, the officer in *Blankenhorn* also testified

5    that such punches are "utilized at times to distract an individual so that his muscles relax

6    momentarily and then you are able to take control." *Id.*  However, the *Blankenhorn* plaintiff—also

7    like Mackay here—had claimed he never pinned his arms underneath his body. *Id.*  Crediting the

8    plaintiff's version of the events, the Ninth Circuit concluded that "a rational jury could find that if

9    [the plaintiff] did not maneuver his arms beneath his body it eliminated the need for any use of

10   force to release them, and thus [the defendant's] punches were not reasonably justified by the

11   circumstances as he claims." *Id.*

12            Several other courts have reached the same conclusion as *Blankenhorn*, concluding that

13   impact strikes on a non-resisting person are likely to be excessive force.  *See Branscum v. San*

14   *Ramon Police Dep't*, 606 F. App'x 860, 863 (9th Cir. 2015) ("Because the officers clearly had

15   probable cause to arrest [plaintiff] for serious offenses and he continued to pose a potential threat

16   to the officers after he lay on the ground, the 'countervailing governmental interests at stake,'

17   would be compelling if [plaintiff] were resisting the officers. . . . But if the jury concluded that no

18   acts of resistance occurred, the officers' use of force would not be 'reasonably justified by the

19   circumstances as [they] claim.'") (internal citations omitted); *Paulino v. Cruz*, No. 16-CV-02642-

20   NC, 2017 WL 2903172, at *5 (N.D. Cal. July 7, 2017) ("At the time of [plaintiff's] arrest, it was

21   clearly established that the degree of force used by the officers [tackling, kneeling, and punching]

22   would be excessive if [plaintiff] was unresisting and nonviolent."); *Turner v. Graff*, No. C 10-

23   5709 CRB PR, 2012 WL 3656492, at *4 (N.D. Cal. Aug. 17, 2012) ("Although plaintiff's

24   resistance created a need for defendants to apply reasonable force to control him in order to

25   maintain discipline and order, kicking, punching and kneeing plaintiff after he was taken down

26   and was face down on the ground supports the finding that the force used by defendants was

27   unreasonably excessive or brutal, even if plaintiff did not suffer significant injuries.").

28   Case No.: 19-cv-02257-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFS' MSJ

*United States District Court*
*Northern District of California*

Given that many courts have reached the same conclusion on similar facts, the Court finds that the law was "clearly established" in April 2018 such that Officers Mitchell and Urrutia would have been on notice that they could be violating Mackay's Fourth Amendment rights by punching and kicking him while on the ground.  Accordingly, Defendants Mitchell and Urrutia are not entitled to qualified immunity.  The Court DENIES summary judgment as to Defendants Mitchell and Urrutia.

### 2.   *Devereaux* Fabrication Claim

For Mackay to prevail on his § 1983 claim under *Devereaux*, he must establish that "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused [his] deprivation of liberty."  *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).  To show deliberate fabrication, Mackay must, at minimum, point to evidence supporting one of the following two propositions: "(1) Defendants continued their investigation of [Mackay] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information."  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Defendants assert that they are entitled to qualified immunity from Mackay's *Devereaux* claims.  They argue that Mackay cannot present any evidence that Defendants either continued their investigations of him despite knowledge of his innocence or that they used investigative techniques so coercive that they would yield false information.  Mot. 10.  Defendants also argue that, in any event, Mackay cannot show that the Defendants' behavior violated "clearly established" law when it took place.  *Id.*  In opposition, Mackay recites the various portions of Defendants' police report statements that he disputes and asserts without further support that a jury could find that those statements were deliberately fabricated to criminally charge and convict Mackay.  Opp. 15-17.

In evaluating Defendants' qualified immunity, it is worth noting that *Devereaux* does establish that there is a constitutional due process right "not to be subjected to criminal charges on

the basis of false evidence that was deliberately fabricated by the government." *Devereaux*, 263 F.3d at 1074-75.  However, Defendants have presented arguments that Mackay's constitutional rights under *Devereaux* were not violated, and Mackay has not produced any evidence that would indicate otherwise.  The opposition's recitation of disputed statements in the police reports is insufficient, as "not all inaccuracies in an investigative report give rise to a constitutional claim." *Spencer v. Peters*, 857 F.3d 789, 798–99 (9th Cir. 2017).

Furthermore, Mackay makes no effort to meet the two-pronged "stringent test" set forth by *Devereaux* for deliberate fabrication, which requires that Defendants either (1) continued their investigation of Mackay despite knowing he was innocent, or (2) used investigative techniques so coercive and abusive such that they would have yielded false information.  *See Devereaux*, 263 F.3d at 1076.  Mackay does not, for instance, present any evidence that Defendant officers continued their investigation of him or that he was innocent of the crimes he was charged with. *See Highbaugh v. Caitham*, No. C 20-03911 WHA, 2021 WL 3141215, at *9 (N.D. Cal. July 26, 2021) ("It bears pointing out that the first prong of *Devereaux*'s standard requires innocence."). Nor does Mackay identify any techniques Defendants used that would have yielded false information.  Mackay's failure to address any of these elements is fatal to their claim.

The Court finds that Mackay has not produced any evidence showing a genuine issue of material fact as to whether Defendants violated his constitutional rights under *Devereaux*. Defendants are therefore entitled to qualified immunity from and summary judgment on Mackay's § 1983 claim that Defendants falsified police reports.

## IV.    CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

The Court GRANTS summary judgment in favor of Defendants as to Plaintiff's Second Claim for Relief (*Devereaux* Claim) and Third Claim for Relief (*Monell* Claim).  The Court also GRANTS summary judgment in favor of Defendant Officers David Puckett, Edgar Garcia, Ryan Keating, Clifton Smith, Jose Luis Fletes, and Robert Hernandez on Plaintiff's First Claim for

Case No.: 19-cv-02257-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFS' MSJ

United States District Court
Northern District of California

1    Relief (Excessive Force).

2         The Court DENIES summary judgment as to Defendant Officers Jordy Urrutia and

3    Cameron Mitchell on Plaintiff's First Claim for Relief (Excessive Force).

4         **IT IS SO ORDERED.**

5    Dated:  July 18, 2022

6

7

8                                                        EDWARD J. DAVILA
                                                         United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Case No.: 19-cv-02257-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFS' MSJ

United States District Court
Northern District of California